IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NEW YORK CENTER FOR FOREIGN POLICY AFFAIRS, et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF STATE and ANTONY BLINKEN, in his official capacity as Secretary of State,**<br><br>Defendants. | Civil Action No. 20-cv-3847 (PLF) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Pursuant to the Court's order of May 29, 2024, Plaintiffs New York Center for Foreign Policy Affairs, et al., submit this supplemental brief in opposition to the Government's motion to dismiss, to address new case law relevant to the issues presented.

**I.      Plaintiffs Have Article III Standing.**

As the Amended Complaint makes clear, the individual plaintiffs have faced attacks by the UAE using the same type of weapons the U.S. is selling. Am. Compl., Dkt. 8, ¶¶ 13, 63. Plaintiffs are not merely speculating about how a third party might act. The UAE has already acted in the way that injures Plaintiffs, and the sale will enable it to continue and even increase its current course of action, increasing the risk of injury to Plaintiffs. As we noted in our opposition to the motion to dismiss, Dkt. 11, at 12, where the United States is "restocking the shelves" of a party already harming Plaintiffs, it cannot pretend that Plaintiffs' injury rests upon the actions of an independent third party, nor can it rely on the previous injury to say its actions will not cause additional injury.

1

*Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79 (D.D.C. 2022), cited in the Government's notice of supplemental authority filed in November 2022, does not undermine Plaintiffs' standing here. In that case, the complaint alleged general human rights abuses by the Nigerian government, including "several aerial bombardments of Biafran population centers," *id*. at 83, it did not identify any individual plaintiff as being subject to a previous aerial attack, nor did it allege that any of the plaintiffs currently resided in a facility that (based upon past experience) was likely to be attacked again. Rather, the complaint included several "Doe" plaintiffs, but provided "no specifics" about them other than to say they resided "on land historically occupied by Biafrans." *Id*. at 83, 85. Here, by contrast, the Amended Complaint alleges that the individual plaintiffs not only have been the victim of previous airstrikes, but also reside in just the type of facilities targeted in the past. Dkt. 8, ¶¶ 11-13, 22-44.

Moreover, the sale to Nigeria involved only twelve aircraft, six of which had already been delivered. Here, the sale involves an overwhelming amount of aircraft and munitions, including the most sophisticated aircraft and drones. *See Id.*, ¶¶, 49-50. While the court found it speculative that Nigeria would use the small number of planes it purchased to carry out airstrikes against the Biafran people, *see* 639 F. Supp. 3d at 85, that reasoning does not apply where, as here, the United States has authorized the sale of a massive haul of weaponry that will enable the UAE to continue its harmful activities for years to come.

In fact, another court recently rejected the notion that *Indigenous People of Biafra* required the dismissal of a claim by citizens who frequently travel to Israel and who alleged that the government's allegedly unlawful funding of the Palestinian Authority would increase that risks of being injured by terrorists. *Jackson v. Biden*, 2024 WL 406645, at *2-3 (N.D. Tex. Feb. 2, 2024). The court rejected the contention that any potential injury hinged on the choices of

independent actors, noting that "Article III does not require—and has never required—'a showing of proximate cause or that the defendant's actions are the very last step in the chain of causation.'" *Id*. at *2 (quoting *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019)). Noting the already-existing link between Palestinian Authority funding and terrorism, the court found that the plaintiffs' allegations that the funding increased the likelihood of such attacks was sufficient to demonstrate standing. *Id*. at *3.

Here, as Plaintiffs pointed out in the opposition to the motion to dismiss, this case does not rest on mere speculation that the UAE will use the weapons the U.S. provides to conduct air strikes in Libya and Yemen. As in *Jackson*, the UAE has *already* used U.S. weapons in such strikes. *See* Dkt. 8, ¶¶ 27-29. We do not have to speculate about how the UAE will use the weapons; we already know.

## II.     This Case Does Not Present a Political Question.

In its motion, the government argued that Plaintiffs' claim raises a non-justiciable political question because plaintiffs seek to second-guess "complex foreign policy and national security judgments" by questioning the "wisdom" of the Secretary's decision. See Dkt. 10-1, at 40-41. Plaintiffs responded that, as in *Zivotofsky ex rel. Zivotofsky v. Clinton,* 566 U.S. 189, 196 (2012), this case involves legal issues that are judicially manageable without interfering with foreign policy judgements: whether the Secretary of State (1) made findings required by the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751, *et seq.*, (2) failed to explain a fundamental policy change, and (3) failed to consider required factors. *See* Dkt. 11, at 30-32.

The D.C. Circuit's recent decision in *Schieber v. United States*, 77 F.4th 806, 810-13 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 688, 217 L. Ed. 2d 385 (2024), supports Plaintiffs' argument that the doctrine does not apply here. In *Schieber*, the court held that actions

challenging State Department's denial of their claims for compensation pursuant to an agreement between the United States and France settling non-French nationals' Holocaust deportation claims against France. Recognizing the "narrow" scope of the political question doctrine, the court noted that "[d]isputes involving foreign relations often raise political questions, but not always." *Id*. at 810. Thus, not every controversy that "touches foreign relations" has the characteristic necessary to satisfy the doctrine, that is, disputes that "'turn on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislature.'" *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).

The court found that, although "the Executive is responsible for managing this Nation's relationship with France," reviewing its compensation decisions would not unduly impinge on foreign relations matters. *Id.* at 811. The fact that the Government's actions would be measured against an international agreement "is hardly enough to transform the legal and factual questions in these cases into political ones." *Id*.

The court also found judicially manageable standards because the claims "involve not the design, but the administration of a foreign claims settlement scheme set out in an international agreement." *Id.* Resolving the claims would require the court to "interpret the terms of a written legal instrument," "decide whether the Department treated like claims alike," and "assess whether an agency's finding of fact was adequately supported in an administrative record." *Id*. And there is "nothing unusual or awkward about the courts resolving such questions." *Id*. The court reached this conclusion even though the claims involved a "host of threshold legal issues" about the international agreement with France. *Id*. While "these questions arise in a foreign-policy context," they do not defy judicial application because "they are legal ones—which turn on familiar legal considerations such as text, structure, and history." *Id.*

As in *Schieber*, the questions here are legal ones that are fully capable of judicial application. Plaintiffs allege that the State Department failed to make the findings required by the AECA, failed to acknowledge (much less explain) a fundamental policy change, and failed to consider key factors it was required to consider. The court can address these legal issues without deciding whether the Secretary of State's policy decision to authorize the sale of arms to the UAE was correct.

### III. The State Department's Decision is Not Committed to Agency Discretion By Law.

Since the filing of the parties' briefs, the Supreme Court has reiterated the "strong presumption" in favor of judicial review of final agency action. *See Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 733 (2022). However, the standard (whether there is "law to apply") has not changed.

As noted in our opposition to the motion to dismiss, Dkt. 11, at 26-28, there is "law to apply" here. The AECA expressly precludes the sale of any defense article or service unless "the President finds that the furnishing of defense articles and defense services to such country or international organization will strengthen the security of the United States and promote world peace." 22 U.S.C. § 2753(a)(1). Moreover, the State Department may not grant a license to export any articles on the Munitions List without considering whether the article would contribute to an arms race or undermine nonproliferation agreements. *Id.* § 2778(a)(1). A court does not need to second-guess the Secretary's findings to review the legal question of whether the Secretary made the required findings in the first instance.

### IV. There is No Basis To Decline "Discretionary" Relief.

Relying on *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985), *and Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010), the government has argued that the court should dismiss the action because it has "discretion" not to grant the relief requested. *See* Dkt. 10-1, at

44-45. But *Sanchez-Espinoza* and *Al-Aulaqi* are the only two cases to invoke this rarely used vehicle for dismissal. And, as Plaintiffs pointed out in their opposition (*id.* at 38-39), this case does not involve general statutes that are not "specifically addressed" to this situation. *Sanchez-Espinoza*, 770 F.2d at 208.

The only recent case discussing *Sanchez-Espinoza* makes that distinction. In *Jackson*, 2024 WL 406645, at *7, the court declined to apply *Sanchez-Espinoza*'s discretionary relief rationale to a claim that providing funding to the West Bank and Gaza violated the Taylor Force Act (which prohibited funding that benefits the Palestinian authority). The court held recognized the importance of national security and foreign affairs, but noted that "the relief requested here would be granted only if Defendants are in violation of the TFA. And assuring fidelity to the TFA and Congress's directives therein would serve U.S. interests, not undermine them." *Id*. So too here. Assuring fidelity to the procedural requirements of the AECA would protect rather than undermine U.S. interests.

## V. Plaintiffs Fall Within the Zone of Interests of the Statute.

As Plaintiffs noted in their opposition to the motion to dismiss, Dkt. 11, at 20-25, they are "arguably within the zone of interests" of the relevant statute to meet this standard. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 (1987). The legal standards for the zone of interest inquiry, which is "not meant to be especially demanding," *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 225 (2012), have not changed. Plaintiffs therefore will not repeat the arguments from their original opposition on this issue.

## CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' opposition to the motion to dismiss, the Court should deny the Government's motion to dismiss.

June 24, 2024                                      Respectfully submitted,

                                        By:  /s/ *Matthew M. Collette*
                                             Matthew M. Collette
                                             DC Bar No. 427617
                                             MASSEY & GAIL LLP
                                             1000 Maine Ave. SW, Suite 450
                                             Washington, DC 20024
                                             Direct: (202) 795-3326
                                             Fax: (312) 379-0467
                                             mcollette@masseygail.com

                                             *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 24th day of June 2024, I served a copy of the foregoing upon counsel of record electronically via this court's ECF system.

/s/ *Matthew M. Collette*
Matthew M. Collette
Counsel for Plaintiffs